320 S.W.3d 525 (2010)
In the Interest of P.C.S. and L.R.S., Children.
No. 05-08-00438-CV.
Court of Appeals of Texas, Dallas.
August 12, 2010.
*527 Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, TX, for Appellant.
Julie C. Reedy, Attorney at Law, Jimmy L. Verner, Jr., Verner & Brumley, Dallas, TX, for Appellee.
Before Justices FITZGERALD, LANG, and SMITH.[1]

OPINION
Opinion By Justice LANG.
Stacy Scannell (Mother) appeals the trial court's order granting the motion of Stephen Scannell (Father) to modify his child support obligation. Mother asserts five issues on appeal. In issues one and two, Mother argues the trial court erred as a matter of law by not including in the calculation of Father's "net resources" a cash inheritance Father received subsequent to the parties' divorce, the value of Father's personal use of his company's truck, and a $1000 monthly health insurance premium paid on Father's behalf by his company. Alternatively, in her third issue, Mother asserts the trial court abused its discretion by not considering Father's inheritance, the value of his personal use of his company's truck, and the health insurance premium paid on his behalf by his company as "additional factors" supporting departure from the statutory child support guidelines. In her fourth and fifth issues, Mother contends the trial court abused its discretion by not requiring Father to contribute to the children's private school tuition and by finding that there had been a material and substantial change of circumstances that warranted modification of the parties' prior child support provisions.
We conclude the trial court erred by failing to include Father's $400,000 cash *528 inheritance in calculating his net resources, but did not err by not including the value of Father's personal use of his company's truck or the health insurance premium paid on his behalf by his company in calculating such resources. Further, we conclude the trial court did not abuse its discretion by (i) failing to consider the value of Father's use of the company truck or the health insurance premium paid on his behalf as factors supporting departure from the statutory child support guidelines, where the evidence did not support such consideration; (ii) failing to require Father to contribute to the children's private school tuition; or (iii) finding there had been a material and substantial change in circumstances that warranted modification of the prior order regarding child support. We affirm the trial court's order in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

I. FACTUAL AND PROCEDURAL BACKGROUND
The parties have two children, P.C.S. and L.R.S., who were eighteen years old and fifteen years old, respectively, at the time of trial. Both children have developmental and psychological issues, including Asperger's syndrome, and L.R.S. is also bi-polar. Witnesses testified that the children will require medication and counseling all their lives. The children are enrolled in private schools specializing in teaching children with such issues. Each child also regularly sees a therapist for counseling and a psychiatrist for medication management.
The parties were divorced pursuant to a September 12, 2003 agreed divorce decree. Under the decree, both parents were designated as joint managing conservators, and Mother had the right to establish the children's primary residence. The decree required Father to pay regular child support of $1500 per month for both children, provide them with health insurance, and pay half of the children's school tuition and sports-club charges. By the time of trial, half of the children's tuition was $1850 per month, and half of the sports-club charges was $62.50 per month. The decree required each party to pay half of the children's medical expenses incurred with in-network medical providers. Any expenses for non-network medical providers were to be borne by the party who took the children to that medical provider. The children's therapists and psychiatrist selected by Mother are not part of either parent's medical insurance network, so Mother receives little assistance in paying those expenses from medical insurance and no assistance from Father.
At the time of the divorce in 2003, Father was employed as a mechanical engineer in the food-processing industry, earning about $110,000 per year. Mother was a psychologist working for a veterans' hospital, earning about $160,000 per year. In 2004, Father remarried and bought a house in Plano. In early 2005, he was laid off from his job and given a severance package of six-months' salary and benefits. Despite applying for many positions in the food-processing industry, he was unable to obtain employment in that field. Between the time he was laid off and July 2005, Father used retirement funds, which were "liquidated through deferred compensation," to pay back loans and cover living expenses. In July 2005, Father filed a motion to modify his child support. The trial court issued temporary orders in August 2005 reducing Father's child support to $305 per month and suspending his obligation to pay a portion of the children's tuition and sports-club charges.
Between August 2005 and early 2006, Father had two short-term consulting jobs. *529 On January 26, 2006, the parties agreed to modify the temporary orders. Under the modified temporary orders, Father's child support was raised to $686.03, retroactive to November 2005. In addition, Father agreed to pay P.C.S.'s tuition for November and December 2005. Further, the parties agreed that in future months where Father's net resources exceeded $6000, Father "shall additionally pay a proportionate share of the school tuition" for P.C.S.
In late 2005 and early 2006, Father received, in at least two installments, a cash inheritance of approximately $400,000 from his aunt's estate.[2] Having been unable to find steady employment in the food-processing industry, Father decided to go into business for himself. With $30,000 from his inheritance, he purchased a franchise from "Andy OnCall," a home-handyman business, in January 2006. Also, he invested about $30,000 more from the inheritance in setting up the business. Father's wife then left her job at the post office and went to work for the new business,[3] which "got off the ground" in March 2006. During the first year of business, Father and his wife were unable to pay themselves salaries because the business was not yet profitable. Accordingly, Father used money from his inheritance to pay their living expenses, child support, and some accumulated debts. In the second year of operation, the business was doing well enough that it paid them each a salary of $6000 per month and paid $1000 per month for the health insurance that covered Father, his wife, and her adult son. Father used $150,000 of the money remaining from the inheritance to purchase an annuity retirement investment to replenish the retirement funds he had used during 2005 to pay debts and cover living expenses,[4] and he provided $1000 of the inheritance to his wife's son to help him purchase a vehicle. The remainder of the inheritance, about $75,000, was placed in a money market fund to be used during periods when business was slow. The money market fund earns $38 interest per month.
Father filed an amended motion to modify on February 14, 2007. On March 2, 2007, an associate judge modified Father's child support obligation to $1750 per month. On September 12, 2007, the trial court again modified the temporary orders to require Father to pay child support of $921.86 per month.
The case went to trial before the trial court on November 29, 2007, with a second hearing on February 5, 2008. Mother testified that because of the reduced child support and loss of assistance with the children's tuition, she had gone into debt to keep the children in their schools and to pay their therapists. Mother took out a home equity loan, borrowed $36,000 from an education-services lender to pay the children's tuition, and, in addition to those debts, owed P.C.S.'s school over $44,000. She could no longer afford child care, had used up all her vacation and sick leave to care for the children, and was facing the prospect of having to take leave without pay if she missed any more work to care for the children.
*530 In its March 13, 2008 final order on the motion to modify, the trial court found in relevant part (1) "the circumstances of the child or a person affected by the order have materially and substantially changed," requiring modification of the order; (2) Father's monthly net resources are $4097; (3) child support under the guidelines of the family code would be twenty-five percent of net resources, or $1024.25; (4) application of the family code's child support guidelines "would be inappropriate" because both children have special needs necessitating deviation from the guidelines; and (5) Father should pay additional support in the amounts of $170 per month for reimbursement of the insurance carried by Mother and $400 per month "to cover additional special medical needs of the children." As in the original decree, the modified order required each of the parents to pay one-half of the children's uninsured and non-reimbursed medical expenses incurred with in-network health-care providers, but any out-of-pocket expenses for non-network medical providers were to be borne by the party who took the children to that medical provider. Finally, the trial court found the "amount of actual child support ordered to be paid" by Father was $1594.33 per month, which was approximately thirty-nine percent of his monthly net resources before payment of medical expenses. In its May 1, 2008 findings of fact and conclusions of law, the trial court concluded in relevant part that an inheritance is not included in the statutory definition of "net resources" for the purpose of setting the amount of child support. This appeal timely followed.

II. MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES
As a threshold matter, we begin with Mother's fifth issue, in which she contends the trial court abused its discretion by finding there had been a material and substantial change in circumstances since the entry of the divorce decree requiring modification of the child support provisions.

A. Standard of Review and Applicable Law
When, as here, the parties have agreed to a support order for child support that is different from the amount required by the child support guidelines, the trial court has discretion to modify the support order "only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." TEX. FAM.CODE ANN. § 156.401(a-1) (Vernon 2008). The movant on a motion to modify has the burden to show the requisite material and substantial change in circumstances since rendition of the previous order. Farish v. Farish, 921 S.W.2d 538, 541 (Tex.App.-Beaumont 1996, no writ). "In determining whether there has been a material and substantial change in circumstances, it is well-settled that the trial court must examine and compare the circumstances of the parents and any minor children at the time of the initial order with the circumstances existing at the time modification is sought." In re C.C.J., 244 S.W.3d 911, 917 (Tex.App.-Dallas 2008, no pet.).
The determination of whether circumstances have materially and substantially changed for purposes of modifying child support is within the trial court's discretion. See Farish, 921 S.W.2d at 541. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. In re M.M.S., 256 S.W.3d 470, 478 (Tex.App.-Dallas 2008, no pet.); Garner v. Garner, 200 S.W.3d 303, 306 (Tex.App.-Dallas 2006, *531 no pet.). The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. See In re M.M.S., 256 S.W.3d at 478; see also Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985) (fact that trial court may decide matter within its discretionary authority in different manner from appellate court in similar circumstance does not demonstrate abuse of discretion). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant in assessing whether the court abused its discretion. In re J.D.D., 242 S.W.3d 916, 920 (Tex.App.-Dallas 2008, pet. denied); Garner, 200 S.W.3d at 306.

B. Application of Law to Facts
Mother contends that although Father lost his job within the time period at issue, his actual circumstances did not materially and substantially change in light of his inheritance of approximately $400,000 during that same time period. Accordingly, Mother asserts Father failed to carry his burden to meet the requisite standard of "material and substantial change." Father responds that although his "net worth has increased by virtue of his inheritance," his income has diminished materially and substantially since the time of the divorce.
We begin by addressing Mother's contention that the Farish case is analogous to this case. Farish involved a father who moved to modify his child support obligation in light of a "decline in his net resources, his remarriage, another child, and private school tuition increases." Farish, 921 S.W.2d at 541. The father's primary argument in support of his claim was the alleged necessity of the sale of most of his assets to pay his debts and child support. Id. The court in Farish noted the record showed the father had sold forty-one assets since the time the divorce decree at issue was rendered and had used most of the proceeds of approximately $3.1 million to pay debts. Id. at 544-45. However, the court concluded the father's circumstances had not materially and substantially changed because, even without considering the application of the proceeds from the sale of his assets to pay debts, "his salary and other income significantly increased" during the time period at issue. Id. at 544.
Mother argues that "like the Father in Farish, rather than suffering a downturn, Father's finances have actually improved" since the time of the divorce decree. However, in Farish, despite the depletion of substantial asset holdings to pay debts, the father's salary and other income significantly increased during the time period at issue. See id. The record in this case is distinguished from that in Farish because it shows Father's salary and other income decreased during the time between the divorce decree and the time the modification was sought. Between the time he was laid off and July 2005, Father used retirement funds, which were "liquidated through deferred compensation," to pay back loans and cover living expenses. Father filed a motion for modification of the September 12, 2003 divorce decree in July 2005. In late 2005 and early 2006, Father received an inheritance of approximately $400,000. Subsequently, he used approximately $60,000 of that inheritance to start a business. He testified he had no salary for about a year while waiting for the business to become profitable, and he used the inheritance to pay living expenses, child support, and some accumulated debt during that time. Once the business became profitable, Father used $150,000 of his inheritance to purchase an annuity retirement investment to replenish the retirement funds he had used to pay back loans and cover living expenses prior to *532 receiving the inheritance, and he provided $1000 of the inheritance to his wife's son to help him purchase a vehicle. The remainder of the inheritance, about $75,000, was placed in a money market fund that earns approximately $38 interest per month. In February 2007, Father filed an amended motion to modify. At the time trial commenced in November 2007, Father's monthly salary was approximately $6000, a decrease of approximately $38,000 from his annual salary in 2003 at the time of the divorce decree.
Because there is some evidence in the record supporting the finding of a material and substantial change in Father's circumstances since the time of the divorce decree, we cannot conclude the trial court abused its discretion regarding its determination as to such a change. See In re M.M.S., 256 S.W.3d at 478; Labowitz v. Labowitz, 542 S.W.2d 922, 925-26 (Tex. Civ.App.-Dallas 1976, no writ) (temporary fluctuation in father's income constituted material and substantial change despite allegation that father was still capable of supporting children in same general manner); cf. Clark v. Jamison, 874 S.W.2d 312, 316-17 (Tex.App.-Houston [14th Dist.] 1994, no writ) (trial court did not abuse discretion in refusing father's request for decrease in child support despite finding material and substantial change in circumstances, where evidence showed father's income may have actually increased). We decide against Mother on her fifth issue.

III. NET RESOURCES
Next, we address Mother's first and second issues, in which she alleges the trial court erred as a matter of law by not including in Father's "net resources" the inheritance of approximately $400,000 Father received subsequent to the parties' divorce, the value of Father's personal use of his company's truck, and the $1000 monthly health insurance premium paid on Father's behalf by his company.

A. Standard of Review
The interpretation of a statute is a legal question, and we review the trial court's construction of a statute de novo. Entergy Gulf States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex.2009); Waltenburg v. Waltenburg, 270 S.W.3d 308, 312 (Tex. App.-Dallas 2008, no pet.). Our objective is to ascertain and give effect to the legislature's intent. Entergy Gulf States, Inc., 282 S.W.3d at 437; Waltenburg, 270 S.W.3d at 312. Statutes must be construed as written and legislative intent determined, if possible, from their express terms. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex.2001). If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008). "We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys., 255 S.W.3d 619, 633 (Tex.2008) (citing TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005); Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 356 (Tex.2004), superseded by statute on other grounds, TEX. GOV'T CODE ANN. § 311.034). "We presume the Legislature intended a just and reasonable result by enacting the statute." Id. (citing TEX. GOV'T CODE ANN. § 311.021(3)).

B. Applicable Law
Under Texas law, child support is generally determined by calculating the child *533 support obligor's monthly "net resources" and applying statutory guidelines to that amount. See TEX. FAM.CODE ANN. §§ 154.061(a), 154.062, 154.125 (Vernon Supp. 2009); see also § 154.122 (Vernon 2008) (amount of support determined by the child support guidelines is presumed to be appropriate amount of support). Texas Family Code section 154.062 defines "net resources" as follows:
§ 154.062. Net Resources
(a) The court shall calculate net resources for the purpose of determining child support liability as provided by this section.
(b) Resources include:
(1) 100 percent of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses);
(2) interest, dividends, and royalty income;
(3) self-employment income;
(4) net rental income (defined as rent after deducting operating expenses and mortgage payments, but not including noncash items such as depreciation); and
(5) all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.
(c) Resources do not include:
(1) return of principal or capital;
(2) accounts receivable;
(3) benefits paid in accordance with the Temporary Assistance for Needy Families program; or
(4) payments for foster care of a child.
Id. § 154.062(a)-(c).[5]
After determining the obligor's net resources and the percentage of net resources the obligor would pay under the guidelines, the trial court then considers whether any additional factors would justify varying from the guidelines. See In re B.R.G., 48 S.W.3d 812, 818-19 (Tex.App.-El Paso 2001, no pet.). Specifically, section 154.123 provides:
§ 154.123. Additional Factors for Court to Consider
(a) The court may order periodic child support payments in an amount other than that established by the guidelines if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines.
(b) In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the court shall consider evidence of all relevant factors, including:
(1) the age and needs of the child;
(2) the ability of the parents to contribute to the support of the child;
(3) any financial resources available for the support of the child;
(4) the amount of time of possession of and access to a child;
(5) the amount of the obligee's net resources, including the earning potential of the obligee if the actual income of the obligee is significantly *534 less than what the obligee could earn because the obligee is intentionally unemployed or underemployed and including an increase or decrease in the income of the obligee or income that may be attributed to the property and assets of the obligee;
(6) child care expenses incurred by either party in order to maintain gainful employment;
(7) whether either party has the managing conservatorship or actual physical custody of another child;
(8) the amount of alimony or spousal maintenance actually and currently being paid or received by a party;
(9) the expenses for a son or daughter for education beyond secondary school;
(10) whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer, another person, or a business entity;
(11) the amount of other deductions from the wage or salary income and from other compensation for personal services of the parties;
(12) provision for health care insurance and payment of uninsured medical expenses;
(13) special or extraordinary educational, health care, or other expenses of the parties or of the child;
(14) the cost of travel in order to exercise possession of and access to a child;
(15) positive or negative cash flow from any real and personal property and assets, including a business and investments;
(16) debts or debt service assumed by either party; and
(17) any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.
TEX. FAM.CODE ANN. § 154.123.

C. Application of Law to Facts

1. Is an Inheritance a "Resource"?
In her first issue, Mother asserts the trial court incorrectly concluded as a matter of law that inheritances are not included in the family code's definition of "resources."[6] According to Mother, inheritances fall under section 154.062(b)(5)'s classification of "all other income actually being received, including... gifts" because "inheritances are merely gifts received pursuant to a will." Mother contends the family code "does not differentiate between one time gifts and on-going gifts." Further, Mother asserts the use of the word "including" in section 154.062(b)(5) is especially relevant in light of the interpretation of that term as one of enlargement in the government code's general rules of code construction. See TEX. GOV'T CODE ANN. § 311.005(13) ("`Includes' and `including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").
Father argues the trial court correctly concluded that an inheritance is not part of the statutory list of items that constitute resources for child support purposes. In his brief on appeal, Father states "the trial court ... noted that had the Texas legislature intended to include inheritance as *535 part of an obligor's net resources for child support purposes, it could have specifically so stated, just as it did when it defined separate property to consist, among other things, of `property acquired by the spouse during marriage by gift, devise, or descent.'" Further, Father contends "only periodic gifts, such as a monthly stipend for a college student, can be considered income for child support purposes."
No published Texas opinion has expressly reached the issue of whether the principal of a cash inheritance is part of a parent's resources for purposes of determining child support under family code section 154.062. See TEX. FAM.CODE ANN. § 154.062. While cases involving statutes of other states illustrate a variety of approaches to the issue,[7] none of those statutes is identical to the provision before us. According to Texas law, our objective in interpreting a statute is to ascertain and give effect to the legislature's intent. See Entergy Gulf States, Inc., 282 S.W.3d at 437; Waltenburg, 270 S.W.3d at 312.
Section 154.062(b)(5) provides that resources include "all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, unemployment benefits, *536 disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony." TEX. FAM. CODE ANN. § 154.062(b)(5). None of these key terms (i.e., "income" and enumerated types of "income") is defined in the family code for purposes of chapter 154. But cf. id. § 8.001(1) (Vernon 2006) (defining spousal "maintenance" for purposes of chapter eight as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse"); id. § 159.102(5) (Vernon 2008) (defining "income" for purposes of chapter 159, the Uniform Interstate Family Support Act, to include "earnings or other periodic entitlements to money from any source and any other property subject to withholding for support under the law of this state"). The rules of statutory construction provide that unless a word is connected with and used with reference to a particular trade or subject matter or is used as a word of art, the word shall be given its ordinary meaning. TEX. GOV'T CODE ANN. § 312.002 (Vernon 2005); see also id. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); id. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); FKM P'ship, Ltd., 255 S.W.3d at 633 (absent definition or technical meaning, statute's words are construed according to plain and common meaning unless contrary intention is apparent or result is absurd); cf. Guthery v. Taylor, 112 S.W.3d 715, 721 (Tex.App.-Houston [14th Dist.] 2003, no pet.) ("when construing a statutory word or phrase, a court may take into consideration the meaning of the same or similar language used elsewhere in the act or in another act of similar nature").
We have considered the definitions supplied for some terms in the family code described above and the common usage and ordinary meaning of the terms used in section 154.062(b)(5). Not surprisingly, we conclude that section lists income of assorted types and nature. Further, while several of the types of income listed could be categorized as involving regular, periodic receipts of money (e.g., retirement benefits, social security benefits, unemployment benefits, disability and workers' compensation benefits, interest income, spousal maintenance, alimony), others are likely to involve nonrecurring payments (e.g., gifts, prizes, capital gains). See TEX. FAM.CODE ANN. § 154.062(b)(5). Yet, any of the types of income listed in section 154.062(b)(5) could be periodic or nonrecurring, depending on the circumstances. See id. Additionally, while most of the types of income listed are generally likely to be derived from the capital or labor of the obligor, cf. WEBSTER'S THIRD NEW INT'L DICTIONARY 1143 (1981) (defining income as "a gain or recurrent benefit that ... derives from capital, labor, or a combination of both"), others are not (e.g., gifts, prizes, spousal maintenance, alimony). See TEX. FAM.CODE ANN. § 154.062(b)(5). Thus, section 154.062(b)(5) indicates no intent to exclude from "resources" income involving nonrecurring payments and include only "periodic" payments, as argued by Father, or to include only sums paid to the obligor respecting his capital or labor.[8]
*537 As correctly argued in part by Mother above, the general rules of code construction provide that "includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of those terms does not create a presumption that components not expressed are excluded. See TEX. GOV'T CODE ANN. §§ 311.005, 311.005(13) (defining "includes" and "including" and providing that definitions therein apply unless statute or context requires different definition). Based on the language of section 154.062(b)(5) and the rules of statutory and code construction, we conclude the legislature's intent is that all receipts of money that are not specifically excluded by the statute (section 154.062(c)), whether nonrecurring or periodic, whether derived from the obligor's capital or labor or from that of others, must be included in the definition of "resources."[9] Thus, we cannot say that a cash inheritance from a third party paid to the obligor of child support in two payments, as in the case before us, is not a "resource" under the inclusive language of section 154.062(b)(5). We conclude the language of that section creates a catch-all provision, and a cash inheritance is a "resource" pursuant to that provision.[10] Accordingly, we need not address the issue raised by the parties as to whether an inheritance constitutes a "gift" pursuant to section 154.062(b)(5).
The dissent disagrees with our conclusion on this issue. We respectfully disagree with the method the dissent uses to achieve its conclusion.
First, we note a material departure by the dissent from our analysis that focused upon the interpretation of the whole of section 154.062(b)(5) to conclude the cash inheritance in this case is a resource. We believe the dissent improperly focuses primarily on the introductory phrase of that section, "all other income," when it concludes "[a]n inheritance is not commonly or legally considered income." In re P.C.S., No. 05-08-00438-CV, 320 S.W.3d at 544 (Tex.App.-Dallas Aug. 12, 2010). In support of its position that "income" is the key to interpreting section 154.062(b) and the enumerated items listed in section 154.062(b)(5) are to be considered types of income (differentiating them from an inheritance), we are cited to definitions of the term "income." Included is a definition of "gross income" from the Internal Revenue Code that excludes an "inheritance." Also included are definitions of *538 "income" from the 1979 and 2009 editions of Black's Law Dictionary, Merriam Webster's Collegiate Dictionary, and two "Oxford" dictionaries. See id. at 538. However, the dictionary definitions are inconsistent in that the 2009 edition of Black's Law Dictionary does not exclude "inheritance" from the definition of income.[11] Also, the Internal Revenue Code actually excludes property acquired by "inheritance" as well as "gift" from the term "gross income."[12] Of course, "gifts" are included within the list of items in section 154.062(b)(5), which the dissent suggests are to be considered as types of income. Then, the dissent attempts to reduce the impact of that conflict by stating the family code is not bound by the Internal Revenue Code in calculating income. In our view, the conflict inherent in those definitions creates ambiguity rather than clarity and those authorities are not persuasive of the dissent's position.
Second, the dissent improperly limits the enumerated items in section 154.062(b)(5) to fall within a "common" definition of "income" while acknowledging the term "gifts" in that section to be a term not "commonly" defined as income. The dissent determines that by inclusion in the enumerated items, "gifts" are "characterized" by the legislature as income for purposes of section 154.062(b)(5). At the same time, the dissent persists in asserting that because an inheritance is not specifically enumerated in section 154.062(b)(5), it can only be construed to be included in section 154.062(b)(5) if it is otherwise defined as income. Id. at 546-47. However, that reasoning does not follow in view of the inclusion of the term "including" preceding the enumerated items. That term is one of enlargement, not limitation. See TEX. GOV'T CODE ANN. §§ 311.005, 311.005(13). Accordingly, the enumerated items are not exclusive or exhaustive.
As we clearly stated above, the items enumerated in section 154.062(b)(5) do not fall into any single category such that one could say that they are of the same nature and that other like items not listed are to be excluded. Thus, a conclusion that section 154.062(b)(5) limits itself to items commonly *539 considered income (other than "gifts") does not follow because the dissent's approach has the effect of excluding the term "gifts" from consideration (because it is clearly of a different nature from the other enumerated items) and applying to the rest of the enumerated items the principle of statutory interpretation known as ejusdem generis. See State v. Fid. & Deposit Co. of Md., 223 S.W.3d 309, 312 (Tex.2007) (under principle of ejusdem generis, "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"). Part of a statute cannot be carved out in order to fit a perceived meaning. See Tex. Dep't of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex.2004) (in discerning legislature's intent, statute must be read "as a whole and not just isolated portions"). Section 154.062(b)(5) is broader than the dissent's interpretation.
Third, the dissent would have us analyze the term "inheritance" by looking to part of section 154.062 that the legislature crafted to tell us what "[r]esources do not include." See TEX. FAM.CODE ANN. § 154.062(c). The dissent reasons that an inheritance is "more like a capital asset" that "shall not be included in resources." In re P.C.S., 320 S.W.3d at 546. Yet, while the family code excludes from "resources" a "return of principal or capital," those terms are not defined, much less identified to include an "inheritance." See TEX. FAM.CODE ANN. § 154.062(c). On the one hand, the dissent quarrels with our inclusion of a cash inheritance within section 154.062(b) as a resource because the term is not expressly enumerated, yet the dissent would characterize an "inheritance" as capital when section 154.062(c) does not broadly cast its language by using the expansive term "including" as in section 154.062(b)(5). See id. Statutory interpretation cannot be exercised in such an inconsistent manner.
Fourth, the dissent states that we should not equate an inheritance with the term "gift," as argued by Mother. In re P.C.S., 320 S.W.3d at 546-47. We plainly do nothing of the kind.
Finally, the dissent suggests that the inclusion of the cash inheritance at issue within the definition of "resources" in section 154.062 effects "policy changes" and raises questions about how to apply our interpretation. Id. at 548. The dissent says difficulties arise if an inheritance is, unlike here, noncash, or unproductive real property. Id. Additionally, the dissent is concerned that inclusion of this cash inheritance will "skew net resources so dramatically that the objective of calculating reasonable ongoing child support will be undermined." Id. However, those concerns of the dissent as to noncash or unproductive items are equally applicable to "gifts" or "prizes," or even "in-kind" compensation. See TEX. FAM.CODE ANN. § 154.062(b)(5). Further, as we have clearly noted above in footnote ten, where amounts are not received by an obligor as ongoing payments, Texas case law supports averaging. Moreover, a court cannot force an interpretation of statutory language merely to avoid interpretation dilemmas. As the Texas Supreme Court has stated:
Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation *540 of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.
St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997) (quoting Simmons v. Arnim, 110 Tex. 309, 324, 220 S.W. 66, 70 (Tex.1920)).
We agree with the dissent that "[t]his case involves the interplay between sections 154.062 and 154.123 of the family code." In re P.C.S., 320 S.W.3d at 544. However, we interpret those statutes to express a legislative intent that an inheritance is a "resource" pursuant to section 154.062(b)(5), and "unjust or inappropriate" circumstances that arise as a result of that characterization are to be addressed pursuant to section 154.123. See TEX. FAM. CODE ANN. §§ 154.062, 154.123. We conclude the trial court erred as a matter of law in determining that the inheritance at issue "is not included in the definition of net resources." Mother's first issue is decided in her favor.

2. Personal Use of Company Truck and Monthly Health Insurance Premium
In her second issue, Mother asserts the trial court erred as a matter of law by failing to include the value of Father's personal use of a company truck and the $1000 monthly health insurance premium paid on his behalf by his company in calculating his monthly net resources. Specifically, Mother argues the use of the truck and the $1000 insurance premium are net "resources" resulting from Father's personal service to the company. However, one of the "additional factors" to be considered under section 154.123 is "whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer...." Id. § 154.123(b)(10). Inclusion of the obligor's employment benefits as part of net "resources" is in direct conflict with section 154.123(b)(10), which provides for evidence of such items to be considered in determining whether child support should vary from the presumptively "reasonable" established guidelines. Id. §§ 154.123(a)-(b), 154.122(a). Accordingly, we conclude Father's employment benefits are not part of his net resources under section 154.062(b), but rather are subject to consideration under section 154.123. We decide against Mother on her second issue.

IV. ABUSE OF DISCRETION AS TO ADDITIONAL FACTORS
In her third and fourth issues, Mother asserts the trial court abused its discretion in determining the amount of child support with regard to Father's inheritance, personal use of his company's truck, health insurance premium paid by his company, and non-payment of the children's private school tuition.[13]

A. Standard of Review
A trial court has broad discretion in setting child support payments, and we will reverse the order only if it appears from the record as a whole that the trial court abused its discretion.[14]In re J.D.D., 242 S.W.3d at 919.

*541 B. Application of Law to Facts

1. Personal Use of Truck and Health Insurance Premium
First, we address Mother's third issue with respect to the value of Father's personal use of his company's truck and the $1000 monthly health insurance premium paid on Father's behalf by his company as "additional factors" supporting departure from the child support payments established by application of the statutory child support guidelines. As stated above, one of the "additional factors" to be considered under section 154.123 is "whether the obligor or obligee has an automobile, housing, or other benefits furnished by his or her employer...." See TEX. FAM.CODE ANN. § 154.123(b)(10). With regard to the company truck, the record shows Father testified at trial he drives a company truck for personal use as well as business use. He stated he keeps track of his personal use of the truck and estimated his personal use is "maybe 800 miles" per month. However, he testified he does not "have any idea" how much he will have to reimburse the company regarding that personal use. With respect to the insurance premium paid on behalf of Father by the company, the record shows Father testified the company pays approximately $1000 per month for medical coverage for Father, his wife, and his stepson. However, the record contains no evidence regarding what portion of that premium payment is attributable to insurance for Father. Cf. TEX. FAM.CODE ANN. § 154.069(a) (trial court cannot add any portion of net resources of obligor's spouse when calculating child support obligation).
The record does not show the dollar amount of the "value" of Father's personal use of the company truck he might have received and might retain if the company is not reimbursed, and does not contain evidence regarding what portion of the $1000 health insurance premium payment was attributable to insurance for Father. Therefore, we conclude the trial court did not abuse its discretion in not including the value of those items in its child support calculation. See Stallworth v. Stallworth, 201 S.W.3d 338, 349 (Tex.App.-Dallas 2006, no pet.) (party complaining of abuse of discretion has burden to bring forth record showing such abuse); see also TEX.R.APP. P. 44.1, 47.1 (judgment may not be reversed on appeal unless error complained of probably caused rendition of improper judgment).

2. Payment for Private School
In her fourth issue, Mother contends the trial court abused its discretion when it failed to require Father to contribute to the children's private school tuition. According to Mother, the trial court is essentially forcing her to shoulder one hundred percent of private school costs that Father originally agreed to assist in paying. Father asserts that in deciding not to require him to pay private school tuition for the children, "the trial court weighed the children's needs for private school against the resources available in public school, considered the children's medical conditions and reviewed the parties' financial situations." Father contends the trial court's decision regarding payment for private school tuition was not an abuse of discretion.
*542 The record shows that under the parties' agreed divorce decree, Father agreed to pay half of the children's "school tuition (presumed to be special school tuition)." In his February 14, 2007 amended motion to modify the divorce decree, Father requested that his child support be reduced, "including but not limited to setting the support according to the Texas Family Code guidelines and eliminating any requirement to pay for private school tuition for the children." Mother contended in her responsive pleading in the trial court that none of Father's obligations under the agreed divorce decree should be altered because Father had failed to show that the circumstances of the children or a party affected by the order had materially and substantially changed.
At trial, the trial court heard testimony from several witnesses regarding the children's need for private school. Rosalind Funderburgh, director of Vanguard School, a private school attended by P.C.S., testified she is familiar with both P.C.S. and L.R.S. Funderburgh testified she believes both P.C.S. and L.R.S. should continue to attend private schools and should not be moved to public schools. Dr. Alexandria Doyle testified she has evaluated P.C.S. in the past and sees L.R.S. in ongoing therapy. Doyle testified P.C.S. is not capable of living independently and would be "victimized" in public school, and she did not believe L.R.S. could function in a public school. In response to questions by the trial court regarding public services that might be available to P.C.S. and L.R.S., Doyle testified "Texas Rehabilitation Commissions" might be able to provide occupational training or a "sheltered workshop" for P.C.S. Further, Doyle testified Texas Rehabilitation Commissions might pay for L.R.S. to go to community college.
Father testified he believes both P.C.S. and L.R.S. are capable of functioning in public schools. Father testified he believes L.R.S. is being challenged at the private school he attends, but P.C.S. "could be challenged a lot more." Father stated he has looked into accommodations at Plano public schools and believes P.C.S. would be able to function at a Plano public high school. Father testified he was told by the "director of special needs" at Plano Senior High School "there's really no limit to the special kinds of programs, that [the Plano public school district] can develop to fit the needs of the child." In addition, Father testified he believes P.C.S. could succeed at a community college after graduation from high school because P.C.S. took a community college class in website design in 2007 and did very well. With respect to L.R.S., Father testified he has a great work ethic and his grades at his private school are very good. L.R.S. participates in Boy Scouts and has attended a week-long Boy Scout summer camp out of state. Father testified he has not been able to have much input as to where the children go to school. He believes the children are in a "very sheltered school environment" and that they need "mainstream experiences" in order to prepare them to become part of "regular society" and be successful adults. He testified the children are capable of being left alone for hours at a time and during that time are able to prepare food for themselves and to take care of themselves.
In a February 12, 2008 letter ruling, the trial judge stated in part that Father shall be ordered to pay $400 per month in addition to the guideline amount of child support "to cover additional costs incurred by virtue of the children's special needs." Mother filed a March 6, 2008 motion to reconsider the trial court's ruling, in which she stated in part that "[b]oth children have special needs and require private *543 schooling, which this Court's ruling does not appear to have taken into consideration." In the order at issue, the trial court found that both children "have special needs that would necessitate deviation from the guideline amount of support." Further, the order at issue stated that in addition to the guideline amount of child support, Father shall pay (i) reimbursement to Mother for insurance carried by Mother for the children, (ii) $400 per month "to cover additional special medical needs of the children," and (iii) "[o]ne-half of the costs of medical expenses for both children that are not reimbursed by or covered by insurance, for medical services not rendered to the children within the plan coverage."
It is not clear from the record whether the $400 per month Father was ordered to pay in addition to the guideline amount of support was intended by the trial court to address the children's special needs with respect to private school. However, as noted above, the parties' agreed divorce decree provided Father would pay half of the children's "school tuition (presumed to be special school tuition)." Father's amended motion to modify requested, in part, that the obligation to pay any of the private school tuition be eliminated. Indeed, the findings, conclusions, and orders of the trial court make no reference to any obligation to pay any part of the private school tuition. Regardless of the trial court's intention, it is well settled that the trial court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given their testimony. See Hatteberg v. Hatteberg, 933 S.W.2d 522, 530 (Tex.App.-Houston [1st Dist.] 1994, no writ) (trial court could believe or disbelieve any part of testimony regarding necessity of private school for children). Here, the record contains some evidence that public schools can accommodate the children's special needs and the children would be able to function at such schools. Accordingly, we conclude the trial court did not abuse its discretion in not requiring Father to contribute to the children's private school tuition. See In re M.M.S., 256 S.W.3d at 478. We decide against Mother on her fourth issue.

V. CONCLUSION
Based on the applicable standards of review and the foregoing analysis, we conclude the trial court erred by failing to include Father's $400,000 cash inheritance in calculating his net resources. Additionally, we conclude the trial court did not err by not including the value of Father's personal use of his company's truck or the health insurance premium paid on his behalf by his company in calculating such resources. Finally, we conclude the trial court did not abuse its discretion by (i) not considering the value of Father's use of the company truck or the health insurance premium paid on his behalf as factors supporting departure from the statutory child support guidelines, where the evidence did not support such consideration; (ii) not requiring Father to contribute to the children's private school tuition; or (iii) finding there had been a material and substantial change in circumstances that warranted modification of the prior order regarding child support. Mother's first issue is decided in her favor. We decide against Mother on her remaining issues, with the exception of the portion of Mother's third issue regarding Father's inheritance, which we need not consider.
We reverse the trial court's order with respect to the calculation of Father's net resources and all portions of the order based on such calculation, affirm the trial court's order in all other respects, and remand this case to the trial court for *544 further proceedings consistent with this opinion.
SMITH, J., dissenting and concurring.
BEA ANN SMITH, Justice, dissenting and concurring.
I respectfully dissent from the majority's holding that Father's inheritance should be included as a resource in the initial calculation of child support. The majority's strained interpretation of family code section 154.062(b)(5) ignores the plain language of that section that intends to include "all other income" as a resource. See TEX. FAM.CODE ANN. § 154.062(b)(5) (Vernon Supp. 2009). An inheritance is not commonly or legally considered income. The statute specifically characterizes "gifts and prizes" as income for child support purposes; it fails to treat "inheritances" as income for that purpose.
In straining to convert an inheritance into a resource, the majority overlooks how naturally an inheritance fits the definition of "any other financial resources available for the support of the child" under family code section 154.123(b)(3). See TEX. FAM.CODE ANN. § 154.123(b)(3) (Vernon 2008). Rather than a resource, an inheritance is an additional factor that allows the trial court to vary the child support calculated under the guidelines. Father's $400,000 inheritance is quite properly a financial resource available for the support of his children. Reading the two sections together and harmonizing them, as we must, this Court should hold that the legislature has determined that an inheritance is an "additional factor" under 154.123(b)(3) that allows the trial court to adjust the child support calculated under the guidelines, not a resource under section 154.062(b)(5) to which the guidelines are initially applied.

Calculating Child Support
To calculate child support, one must identify "resources" as defined by the family code, calculate "net resources" as directed in section 154.061 (deducting social security and federal income tax), and then apply the child support guidelines (25% for two children), TEX. FAM.CODE ANN. § 154.125(b) (Vernon Supp. 2009), to those net resources. It is a simple mathematical calculation. Child support calculated in this manner is presumed to be in the best interest of the child. TEX. FAM.CODE ANN. § 154.122(a) (Vernon 2008). In the final step, the trial court must decide whether the application of the guidelines would be unjust or inappropriate under the circumstances, considering evidence of all relevant factors, including those listed in section 154.123(b)(1)-(17). TEX. FAM.CODE ANN. § 154.123(b)(1)-(17). The evidence of additional factors must rebut the presumption that the amount calculated under the guidelines is in the best interest of the children. See TEX. FAM.CODE ANN. § 154.123(a). This case involves the interplay between sections 154.062 and 154.123 of the family code: whether Father's inheritance is a resource to which the child support guidelines are applied or is an additional factor that might warrant increased periodic child support payments for the children.

Resources Include "All Other Income"
Section 154.062 of the family code defines net resources for the calculation of child support. Subsection (b) tells us what items are included as resources; subsection (c) tells us what items are excluded; and subsection (d) tells us what items are deducted from resources to determine net resources. This dispute concerns subsections (b) and (c).
Subsection (b)(1)-(4) lists items that shall be included in resources: wage and salary income; other compensation for *545 personal services (including commissions, overtime pay, tips, and bonuses); interest, dividends, and royalty income; self-employment income; and net rental income. TEX. FAM.CODE ANN. § 154.062(b)(1-4). Significantly, all of these items are forms of income. Section 154.062(b)(5) is a catch-all provision for other income:
(5) all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security benefits other than supplemental security income, unemployment benefits, disability and workers' compensation benefits, interest income from notes regardless of the source, gifts and prizes, spousal maintenance, and alimony.
TEX. FAM.CODE ANN. § 154.062(b)(5).
Finally subsection (c) lists specific items that are not included in resources: return of principal or capital; accounts receivable; benefits paid in accordance with Temporary Assistance for Needy Families program; and payments for foster care of a child. TEX. FAM.CODE ANN. § 154.062(c).
The statutory definition of resources does not specifically include or exclude inheritances. The majority concludes that inheritances are included because section 154.062(b)(5) is a catch-all provision. I disagree because that catch-all provision includes "all other income actually being received," not all other receipts of money. Inheritances may include the receipt of money or other property, but they are not considered income.
Black's Law Dictionary has a succinct definition of income: "The gain derived from capital, from labor or effort, or both combined, including profit or gain through sale or conversion of capital." BLACK'S LAW DICTIONARY 687 (5th ed. 1979). The ninth edition explains that from as early as the sixteenth century income has encompassed the concept of earnings or profit. BLACK'S LAW DICTIONARY 831 (9th ed. 2009). This concept is reflected in non-legal dictionaries as well. Webster's dictionary defines income as "a gain or recurrent benefit usu. measured in money that derives from capital or labor; also: the amount of such gain received in a period of time." Merriam Webster's Collegiate Dictionary 630 (11th ed. 2003). The Oxford English Dictionary defines income as "that which comes in as the periodical produce of one's work, business, land, or investments." Oxford English Dictionary 805 (2d ed., 1989, Vol. VII). The New Oxford American Dictionary defines income as "money received, esp. on a regular basis, for work or through investments," also noting that this sense dates from the late sixteenth century. New Oxford American Dictionary 859 (2001).
All of the items listed in section 154.062(b)(1)-(4) are income. Most of the items included in section 154.062(b)(5) are commonly considered income: severance pay, retirement benefits, pensions, trust income, annuities, capital gains, social security (but not SSI) benefits, unemployment, disability and workers' compensation benefits, and interest from notes. No one would quarrel that these all constitute "income actually being received." Likewise, alimony and spousal maintenance involve taxable income shifted from the payor to the recipient; such payments are treated as taxable income to the recipient.

Gifts and Prizes
Gifts and prizes are specifically named as resources in section 154.062(b)(5). Neither one represents gains from capital, labor, or effort. Prizes received as a result of luck or skill are neither earnings nor profits; however, they are taxable as income. If you win the lottery, you must first deduct the income tax that will be due before claiming your winnings. To clear up any ambiguity (and to avoid reliance on *546 the income tax treatment), the family code has specifically defined prizes as "other income" that will be included in resources for the purpose of calculating child support.
Likewise, gifts are not considered income in the common and ordinary understanding of earnings or profits; gifts are not taxed as income under the Internal Revenue Code.[1] But the family code is not limited by income tax regulations in defining net resources. In holding that adjusted gross income was not the equivalent of net resources, a Houston appellate court has held that family code provisions need not mirror federal income tax regulations in their method of calculating income. Powell v. Swanson, 893 S.W.2d 161, 163-64 (Tex.App.-Houston [1st Dist.] 1995, no writ). For the limited purpose of calculating child support, the family code has specifically characterized gifts as income that should be included as resources.

Inheritances
If a child support obligor receives a gift or prize, the family code specifically tells us both shall be included as resources in calculating child support. But what if the obligor receives an inheritance? The statute does not say that inheritances will be included as "other income." In other words, it does not specifically characterize an inheritance as income for the purpose of calculating child support. This is significant because section 154.062(b)(5) sweeps inheritances into the category of resources only if an inheritance is income.
Black's Law Dictionary defines inheritance as "1. Property received from an ancestor under the laws of intestacy. 2. Property that a person receives by bequest or devise." BLACK'S LAW DICTIONARY 853 (9th ed. 2009). An inheritance is not earned; it does not represent gains or profits; it does not fit the legal or common concept of income. The principal of assets received by will or intestacy are never taxable income to the recipient. Rather, the passage of assets from one individual to another at death may cause an imposition of estate taxes on the estate of the decedent. Moreover, the principal of an inheritance is more like a capital asset, which section 154.062(c) tells us shall not be included in resources. Once an inheritance has passed to a recipient, any income generated by that capital asset is considered income; the asset itself is not income. On his 2006 income tax return, Father reported $7040 in interest and $6528 in dividends earned from his inheritance; he did not, and was not required to, report the $400,000 inheritance as income. The earnings on his inheritance is income; the inheritance itself is not income.
We know the legislature is not bound by the IRS's definition of income, but in this case the family code did not specifically characterize an inheritance as income for child support purposes. Although the legislature chose to define "gifts" and "prizes" as income for the purpose of calculating child support, it chose not to include "inheritances" in that category. This Court should not rewrite the statute to read that "gifts, prizes and inheritances" are included as income. Unless it is specifically treated as income under subsection (b)(5), an inheritance is not a resource. To hold otherwise, the majority ignores the fact that all items to be included as resources under subsection (b) comprise the single category of income, or are specifically characterized as income in (b)(5) for the limited purpose of calculating *547 child support. The majority also ignores the fact that the receipt of principal or capital assets is excluded from resources under subsection (c). Unless the legislature has specifically defined income to include inheritances, the principal of an inheritance should not be included in resources.
Nor should we accept Mother's invitation to hold that "inheritances are merely gifts received pursuant to a will." The legislature understands the difference between a gift and an inheritance. In defining separate property, the family code states that it shall include property acquired during marriage by "gift, devise, or descent." TEX. FAM.CODE ANN. § 3.001(2) (Vernon 2006). If a gift is an inheritance, the terms "devise or descent" in that statute would be superfluous. Courts must not interpret a statute in a manner that renders any part of the statute superfluous. City of Marshall v. City of Uncertain, 206 S.W.3d 97, 105 (Tex.2006). We should not read the term gifts to include inheritances. "When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded." Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex.1995).
The majority contends that because section 154.062(b)(5) lists "gifts and prizes" as income, the limiting words of "all other income" can be ignored. Surely if a gift or a prize is income, any receipt of cash is income, the majority suggests. But precisely the opposite is true. Everything included as a resource under subsection (b)(1)-(5) is income. The majority wants to ignore that all items in subsection (b) fit into the single category of income. The catch-all provision of subsection (b)(5) begins with the words "all other income"; the intent of the statute could not be clearer.
By specifically listing gifts and prizes in section 154.062(b)(5), the legislature did not nullify its statutory instruction that resources shall include only "all other income"; instead it characterized gifts and prizes as income for this limited purpose. The legislature characterized "gifts and prizes" as income for the limited purpose of calculating child support. Significantly, it failed to characterize inheritances as income. The inclusion of "gifts and prizes" does not change the catch-all provision to read that "all other receipts of money" shall be included in resources, as the majority boldly writes: "[W]e conclude the legislature's intent is that all receipts of money not specifically excluded by [section 154.062(c)], whether nonrecurring or periodic, whether derived from the obligor's capital or labor or from that of others, must be included in the definition of `resources.'" In the Interest of P.C.S. and L.R.S., No, 05-08-00438-CV, 320 S.W.3d at 537 (Tex.App.-Dallas Aug. 12, 2010 no pet. h.) (emphasis added). When it is not statutorily characterized as income, an inheritance is like return of principal or capital, which is specifically excluded from resources by subsection (c).
The language of the statute is the best evidence of the legislature's intent. Section 154.062(b)(5) is unambiguous: Resources shall include "all other income actually being received," not all receipts of money. If the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning. City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex.2008). Carefully chosen words, such as "all other income," shall be construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). This Court may not rewrite the statute to state that resources shall include "all receipts of money."
*548 Finally, the majority insists that under the Texas Government Code, the word "including" in section 154.062(b)(5) is a term of enlargement and not of limitation. See TEX. GOV'T CODE ANN. § 311.005(13) ("`Includes' and `including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."). The majority insists that by listing various items in section 154.062(b)(5), such as gifts and prizes, the legislature did not intend to exclude other items, such as inheritances.
I take issue with the majority's accusation that the dissent is guilty of applying the forbidden principle of ejusdem generis. I agree that "including" is a term of enlargement and that the list is not exclusive. However, under the text of this statute, the unexpressed items must be components of "other income." The majority errs when it concludes that section 154.062(b)(5) is a catch-all provision for "all other receipts of money." By its own terms, that section is a catch-all provision for any receipt that is considered income, or has been characterized as income by the family code. Inheritances are not income and are not specifically characterized as income for child support purposes; therefore, they may not be included in resources under subsection (b)(5). Furthermore, inheritances more nearly constitute principal or capital that are specifically excluded from resources by subsection (c).
There are many reasons the legislature may not have intended to treat inheritances as resources in calculating child support. The majority does not address the fact that "an inheritance" may or may not be cash. If inheritances are to be included among "all other income being received," how do you treat non-cash items that may greatly increase the wealth of the recipient but not provide any additional cash flow, or may even diminish cash flow to maintain unproductive real property? Does the majority wish to insert the word "cash inheritances" in the statutory list rather than "all inheritances"?
The child support guidelines must be applied to all items included as net resources to calculate monthly child support. In this case, all $400,000 of Father's inheritance would have to be added to his resources in the year of receipt. Is it unreasonable for the unemployed recipient of a $400,000 cash inheritance to use some of that cash to invest in his own business so he has an income to pay child support in the future? Or to pay off debts so he has more available cash flow? If such a lump sum inheritance is included in resources in one year, will it skew net resources so dramatically that the objective of calculating reasonable ongoing child support will be undermined? This court should not rewrite the statute to include inheritances as resources. The legislature is better equipped than the courts to make such policy changes.

The Family Code's Solution: Section 154.123(b)(3)
It is not necessary to rewrite section 154.062(b)(5) or contort its language to include an inheritance as a resource to calculate fair child support payments. Happily, the family code offers courts a better alternative. The legislature did not overlook the impact that receipt of an inheritance might have on just and appropriate child support payments. While it did not list inheritances as other income to be included in resources under section 154.062(b)(5), the legislature specifically provided that "any financial resources available for the support of the child" could be a relevant factor for adjusting child support calculated under the guidelines. See TEX. FAM.CODE ANN. § 154.123(b)(3).
*549 With all due respect, I contend that family code sections 154.062 and 154.123 must be read in harmony to determine how inheritances should affect the calculation of reasonable child support. Gifts and prizes are included as resources to which the guidelines must be applied, under section 154.062(b)(5), while inheritances more easily fit the definition of an available financial resource that might justify varying from the guidelines under section 154.123(b)(3). Unlike section 154.062 which requires merely a mathematical application of the guidelines to net resources, section 154.123(b)(3) gives the trial court considerable discretion in determining what percentage of an inheritance should be dedicated to the support of children over what periods, in light of all other resources and all other circumstances of the parents and the children.
The trial court below wisely followed the interplay of sections 154.062 and 154.123 on the facts presented in this motion to modify child support payments. The court determined that Father's inheritance was an asset, not income, and thus could not be included as a resource under subsections 154.062(b)(5) and 154.062(c)(1). Preliminarily, the court calculated child support by applying the guidelines for two children (25%) to the net resources of Father; this produced monthly child support of $1024.25. Next the court considered the inheritance and other additional factors under subsections 154.123(b) to order additional monthly child support payments of $570, plus one half of uncovered medical expenses. The total monthly child support payments of $1594, before medical expenses, represented 39 percent of Father's net resources. This thoughtful decision-making process properly reflects how family code sections 154.062 and 154.123 are to be harmonized.

Conclusion
The trial court correctly held that an inheritance is not income but an asset, and thus cannot be included as a resource under the family code as it is now written. I would overrule Mother's first issue and affirm the trial court's ruling. In every other regard, I concur in the majority's opinion.
NOTES
[1] The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.
[2] Father testified, "I had an aunt who passed away in March of '05 and at the end of the year, I received some inheritance and the majority was in the first part of '06."
[3] The business was organized as a corporation with Father and his wife as equal shareholders.
[4] Besides the annuity, Father also has a 401k Plan from his former employer worth $155,433.56 as of September 30, 2007.
[5] Although we recognize that a prior version of section 154.062 was in effect at the time of the trial court's order at issue, the amendments do not affect our analysis of the issues before us. We cite to the current version of the statute in this opinion.
[6] For purposes of this opinion, we consider only whether the principal of an inheritance is included in a party's resources. The parties agree that the interest earned by the inheritance at issue, that is, the $38 monthly interest on the money in the money market fund, was properly included in Father's net resources.
[7] For example, some states' statutes and rules expressly include or exclude inheritances from the funds to which child support guidelines are to be applied. See 2009 IND. R. OF CT.: CHILD SUPPORT R. & GUIDELINES, Guideline 3 (expressly including inheritances); 2008 MICH. CHILD SUPPORT FORMULA MANUAL § 2.05(A) (State Ct. Admin. Office) (expressly excluding property and principal of inheritances and one-time gifts); N.Y. DOM. REL. LAW § 240.1-b(b)(5), (e)(4) (McKinney 2009); N.Y. FAM. CT. ACT § 413.1(c)(4) (McKinney 2009). Alaska's rules do not expressly include or exclude inheritances, but the commentary to the rules states the principal amount of one-time gifts and inheritances should not be included. ALASKA R. CIV. P. 90.3. commentary III.A (West 2009). Provisions in Colorado, Tennessee, and Virginia expressly include gifts ("monetary gifts" in Colorado) in the fund but contain no mention of inheritances. COLO.REV. STAT. ANN. § 14-10-115(5)(a)(I)(U) (West, Westlaw through July 2010); TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)(1) (West, Westlaw through July 2010); VA.CODE ANN. § 20.108.2(C) (West, Westlaw through July 2010). The Colorado Supreme Court held that cash inheritances  at least to the extent they are used for daily expenses  are included in the fund from which presumptive child support is determined. In re A.M.D., 78 P.3d 741, 745-46 (Colo.2003). The Virginia Court of Appeals also held inheritances are included in "gifts." Goldhamer v. Cohen, 31 Va.App. 728, 525 S.E.2d 599, 603 (2000). In Tennessee, inheritances are income for the purpose of applying child support guidelines. Ford v. Ford, No. 01A01-9611-CV-00536, 1998 WL 730201, at *4 (Tenn.Ct.App. Oct. 21, 1998). Washington's statute excludes gifts from the funds to which child support guidelines are applied, and the statute makes no mention of inheritances. See WASH. REV.CODE ANN. § 26.19.071(4)(c) (2009). However, like Colorado, Tennessee, and Virginia, a Washington court has interpreted gifts as including inheritances because "inheritance is essentially a testamentary gift," which means that under the Washington statute, inheritances, like gifts, are not included in the funds to which child support guidelines are applied. See Gainey v. Gainey, 89 Wash.App. 269, 948 P.2d 865, 869 (1997). Provisions in Arkansas, California, and Pennsylvania make no mention of either gifts or inheritances. See ARK.CODE ANN. § 9-14-201(4) (West, Westlaw through July 2010) (definition of "income" amended by In re: Administrative Order No. 10: Ark. Child Support Guidelines, § II, 331 Ark. 581 (Jan. 22, 1998)); CAL. FAM.CODE § 4058(a) (West, Westlaw through July 2010); PA. CONS.STAT. ANN. § 4302 (West, Westlaw through July 2010). However, Arkansas courts appear to have ruled that inheritances are considered part of the funds to which child support guidelines are to be applied, see Ford v. Ford, 347 Ark. 485, 65 S.W.3d 432, 439 (2002), while California and Pennsylvania have determined that inheritances are not. See In re Marriage of Alter, 171 Cal.App.4th 718, 89 Cal.Rptr.3d 849, 860 (2009); Cnty. of Kern v. Castle, 75 Cal.App.4th 1442, 89 Cal.Rptr.2d 874, 882 (1999); Humphreys v. DeRoss, 567 Pa. 614, 790 A.2d 281, 285-86 (2002).
[8] Such interpretation is consistent with the "instructions for use" provided by the Office of the Attorney General in family code section 154.061, which state in part that "§§ 154.061-154.070 provide for appropriate additions to `income' as that term is defined for federal income tax purposes." See TEX. FAM.CODE ANN. § 154.061.
[9] Because the inheritance at issue is a cash inheritance, we do not address whether noncash items are within the scope of section 154.062(b)(5). However, courts of other states have treated noncash gifts and inheritances as income for child support purposes. See Gardner v. Yrttima, 743 N.E.2d 353, 358-59 (Ind.Ct.App.2001); Goldhamer, 525 S.E.2d at 603-04.
[10] Texas case law supports the averaging of such amounts not received as ongoing payments. See, e.g., Koenig v. DeBerry, No. 03-09-00252-CV, 2010 WL 1009170, at *4 (Tex. App.-Austin Mar. 17, 2010, no pet.) (noting that lump-sum retirement benefit received by father could be divided over relevant time period for purpose of calculating monthly child support obligation); see also Knight v. Knight, 131 S.W.3d 535, 541 (Tex.App.-El Paso 2004, no pet.) (court has discretion to fashion child support order based on peculiarities of income at issue); In re Marriage of Grossnickle, 115 S.W.3d 238, 247 (Tex.App.-Texarkana 2003, no pet.) (father's income during three years averaged to determine annual income); Norris v. Norris, 56 S.W.3d 333, 341 (Tex.App.-El Paso 2001, no pet.) (trial court justified in averaging father's gross monthly resources for several years to reach an amount of average gross monthly income for purpose of calculating child support); Hudson v. Markum, 948 S.W.2d 1, 3-4 (Tex.App.-Dallas 1997, writ denied) (five-year average of father's income used for purpose of calculating child support); Farish, 921 S.W.2d at 542 (income of father averaged to determine net monthly resources).
[11] The dissent asserts that the 2009 edition of Black's Law Dictionary "explains that from as early as the sixteenth century income has encompassed the concept of earnings or profit." In re P.C.S., 320 S.W.3d at 545. However, the definition of "income" from that edition states in its entirety the following: "The money or other form of payment that one receives, usu. periodically, from employment, business, investments, royalties, gifts, and the like. See EARNINGS. CF. PROFIT." BLACK'S LAW DICTIONARY 831 (9th ed. 2009). Notably, that definition does not, on its face, exclude inheritances or support the dissent's assertion that inheritances "are not considered income." See In re P.C.S., 320 S.W.3d at 545.
[12] Under section 102(a) of the Internal Revenue Code, "[g]ross income does not include the value of property acquired by gift, bequest, devise, or inheritance." See 26 U.S.C.A. § 102(a) (West, Westlaw through July 2010). The dissent acknowledges the Internal Revenue Code excludes "gifts," with the exception of "employee gifts" as provided in section 102(c), whereas family code section 154.062(b)(5) includes "gifts." In re P.C.S., 320 S.W.3d at 546-47. The dissent also acknowledges that "family code provisions need not mirror federal income tax regulations in their method of calculating income." Id. (citing Powell v. Swanson, 893 S.W.2d 161, 163-64 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("income tax regulations are distinct from the rules in the Family Code, and calculations prepared under one set of rules do not necessarily comply with the requirements of the other")); see also TEX. FAM.CODE ANN. § 159.102(5) (defining "income" for purposes of chapter 159, the Uniform Interstate Family Support Act, to include "earnings or other periodic entitlements to money from any source and any other property subject to withholding for support under the law of this state").
[13] Mother's contentions in her third issue are asserted in the alternative to those in her first and second issues. Because we concluded above that the trial court erred as a matter of law by not including Father's inheritance as a resource pursuant to family code section 154.062, we need not address Mother's contentions regarding that inheritance in her third issue.
[14] As discussed above, a trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. In re M.M.S., 256 S.W.3d at 478; Garner, 200 S.W.3d at 306. The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. See In re M.M.S., 256 S.W.3d at 478; see also Downer, 701 S.W.2d at 241-42. Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant in assessing whether the court abused its discretion. In re J.D.D., 242 S.W.3d at 920; Garner, 200 S.W.3d at 306.
[1] An exception to this rule are gifts from an employer to an employee. See 26 I.R.C. § 102(c) (West 2002).