

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00127-CV

_____

IN THE INTEREST OF J.Z., A CHILD

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-554628-14

Before Sudderth, C.J.; Walker and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

The trial court denied the petition to modify the parent-child relationship (Petition to Modify) filed by Appellant J.K.Z. (Father). In two issues, Father argues that the trial court abused its discretion in denying his Petition to Modify. Because the trial court had evidence from which it could find that Father's financial circumstances had not materially and substantially changed, we affirm.

## BACKGROUND

In 2014, Father filed for divorce from Appellee M.Z. (Mother), using pro se forms. *See Family, Divorce & Children*, TexasLawHelp, https://texaslawhelp.org/family-divorce-children (last visited Oct. 22, 2018). They had one child, J.Z. Both Father and Mother represented themselves in the divorce. On July 9, 2014, the trial court signed the final decree of divorce, which was based on a mediated settlement agreement.[1] In the decree, the trial court ordered Father to pay Mother $1,500 child support per month, plus the cost of J.Z.'s medical insurance. Both parents agreed to the terms of the divorce decree. The divorce decree stated that "[t]he amount of child support is approximately the amount recommended by the Texas Family Code Child Support Guidelines."

---

[1]Father's Petition to Modify asserted that the order to be modified was not based on a mediated settlement agreement, but he acknowledged at trial that it was.

In June 2016, Father filed his Petition to Modify. Father pled that the circumstances of the child or a person affected by the order had materially and substantially changed since the date of the rendition of the divorce decree; that the support payments previously ordered should be decreased; that the support payments ordered in the divorce decree were not in substantial compliance with the guidelines in Chapter 154 of the Texas Family Code; and that the requested decrease would be in J.Z.'s best interest.

After a hearing, the trial court denied the Petition to Modify. The trial court issued the following findings of fact and conclusions of law relevant to this appeal:

> 7. From the evidence presented, [Father] did not meet his burden of establishing a material and substantial change in circumstances since the date of the prior order.
>
> 8. The evidence presented established that the child support amount contained in the prior order was in the best interest of the child.
>
> 9. As [Father] failed to meet his burden, and as it was not in the best interest of the child to modify child support, [Father]'s Petition to Modify Parent-Child Relationship was denied.

Father filed a motion for new trial that was overruled by operation of law. He now appeals.

## DISCUSSION

### I. Standard of Review

We review the trial court's orders regarding child support modification for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002,

3

pet. denied) (op. on reh'g); *see In re A.B.H.*, 266 S.W.3d 596, 601 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g) (applying standard). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze or apply the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). Whether the evidence supporting the decision is legally and factually sufficient is relevant in deciding whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872.

## II. Modifications of Child Support Must Be Supported by Sufficient Evidence.

Because Father filed the Petition to Modify within three years of the original support order, the trial court could modify the amount of support only if Father showed a material and substantial change in circumstances since the signing of the mediated settlement agreement on which the order was based. Tex. Fam. Code Ann. § 156.401(a) (West Supp. 2018).[2] "A trial court's determination as to whether there has been a material and substantial change of circumstances is not guided by rigid rules and is fact specific." *In re V.L.K.*, No. 02-10-00315-CV, 2011 WL 3211245, at *3 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.). When, as here, a parent moving for modification asserts a change in financial circumstances, "[t]he record must contain both historical and current evidence of the relevant person's financial circumstances."

---

[2]The legislature slightly amended this section effective September 1, 2018. Act of May 27, 2015, 84th Leg., R.S., ch. 1150, § 29, 2015 Tex. Sess. Law Serv. 3874, 3874–75 (West) (amending section 156.401 to include orders for dental support for a child). The amendment does not affect the parts of the statute relevant to this appeal.

4

*In re S.D.*, No. 02-10-00221-CV, 2011 WL 3847440, at *4 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op.).

In evaluating whether there has been a material or substantial change of circumstances, the trial court may consider the child support guidelines under Texas Family Code Chapter 154 (the guidelines). Tex. Fam. Code Ann. § 156.402(a) (West 2014). The fact that a child support order does not conform to the guidelines, as Father asserts is the case here, does not by itself establish a material or substantial change warranting modification, and a trial court is not required to modify a support obligation to conform with the guidelines. *Id.*; *see also In re R.D.*, No. 02-04-165-CV, 2005 WL 503055, at *2–3 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.) (mem. op.) (noting that a child support order not in compliance with guidelines does not by itself establish a material or substantial change in circumstances warranting modification and rejecting argument that a material and substantial change mandates a modification of child support payments). If the support previously ordered does not substantially conform to the guidelines, the trial court may modify the previous order to substantially conform with the guidelines, but only if doing so is in the best interest of the child. Tex. Fam. Code Ann. § 156.402(b). "In sum, the trial court retains broad discretion in making the equitable decision of whether to modify a prior child support order." *R.D.*, 2005 WL 503055, at *2; *see also In re A.B.K.*, No. 10-06-00272-CV, 2007 WL 3293724, at *2 (Tex. App.—Waco Nov. 7, 2007, no pet.) (mem. op.) (noting that "[i]n a suit to modify a child support order, the court may modify the order to substantially conform

with the guidelines but the court may also consider other relevant evidence in addition to the factors listed in the guidelines," and "[t]hus, the court's use of the guidelines for setting the amount of child support in a modification proceeding is discretionary, not mandatory" (citation and internal quotation marks omitted)).

As the person seeking a modification, Father had the burden to prove a material and substantial change in circumstances. *S.D.*, 2011 WL 3847440, at *4. Because Father based his Petition to Modify on a change in his financial circumstances, he had the burden to produce both historical and current evidence of his financial circumstances. *Id.*

## III. The Trial Court's Denial of the Requested Modification Was Not an Abuse of Discretion.

In his first issue, Father argues that "[t]he trial court abused its discretion in finding that [he] 'did not meet his burden of establishing a material and substantial change in circumstances since the date of the prior order' because the finding was against the legal and factual sufficiency of the evidence."

### A. The Trial Court Had Evidence of Father's Assets Beyond His Income.

#### 1. Father Produced Evidence that His Income Has Decreased.

To meet his burden to show a material and substantial change, Father presented evidence that his income had decreased since April 2014, the approximate time of the

6

mediated settlement agreement.[3]  *See Reagins v. Walker*, 524 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (noting that a change in the obligor's income can constitute a material and substantial change in circumstances).

Father owns fifty-five percent of ID Innovations Incorporated, with the other forty-five percent owned by one other person.  Father described the company's business as making "magnetic cards and bar code devices, as well as some other types of software."  Father testified that in 2015, the major credit card networks began requiring the use of cards with chips that are incompatible with his company's equipment, "and so [the equipment] immediately [became] obsolete."[4]  At the time of trial, his company was developing new products, but he stated that "it's a very long, time-consuming process."  In the meantime, the company was reducing costs; he had frozen employee salaries.  His goal was to get new products on the market by the year's end.  He stated, "we believe that we have enough capability in order to improve . . . our income status."  Father acknowledged on cross-examination that, at the time he agreed

---

[3]The statute required Father to show a change in circumstances since the date he and Mother signed the mediated settlement agreement.  Tex. Fam. Code Ann. § 156.101(a) (West 2014).  Father failed to establish the exact date on which the mediated settlement agreement was signed, but Father testified that the agreement was "from April of 2014."

[4]*See* Danielle Douglas, *MasterCard, Visa explain why your credit card isn't safer*, Wash. Post: Wonkblog (Feb. 20, 2014), https://www.washingtonpost.com/news/wonk/wp /2014/02/20/mastercard-visa-explain-why-your-credit-card-isnt-safer (noting that three years prior to the article's date, MasterCard, Visa, and the other credit card companies "laid down an ultimatum . . . that any actor without chip technology in place by October 2015 would have to bear the cost of fraud.") (last visited Oct. 24, 2018).

to pay $1,500 a month in support, he was aware that the change from unchipped to chipped cards was imminent and that he could anticipate fluctuation in his income "in 2015 for sure, because that was the date that [the credit card networks] were going to roll it out."[5] Father has a degree in computer science, but he doubted that he could find another job with a similar income to what he earned in the past, given the type of code he uses in his work and his age (fifty-four). At the time of the hearing, he had been paying himself a lower salary, giving him a gross income of about $3,000 a month. Father testified that he has reduced his salary rather than maintaining it by drawing from the company's retained earnings—past earned income saved by the company—because spending the retained earnings "reduces our ability to run the company. The cash is what we use to run our company." He also acknowledged, however, that since the divorce, rather than spending any of its retained earnings to run the company or otherwise, the company added about $13,000 to the retained earnings. At the end of 2015, the company had $318,000 in retained earnings. Aside from its retained earnings, the business also has a money market account that it treats as a savings account. Rather

---

[5]Father argues that there is no evidence that he knew at the time of the divorce exactly how much his income would fluctuate or by what date the anticipated decrease would actually occur. That is technically true; Father did not testify to knowing any specific amounts in projected decreased income or a specific date by which his business would start losing income. There was, however, evidence that Father knew the change would happen "in 2015 for sure" and that his business's equipment could not accommodate those cards, rendering them functionally obsolete.

than decreasing between the divorce and the modification hearing, the amount in that account had increased from just over $198,000 to just over $237,000.

## 2. The Evidence Also Showed that Father Has Substantial Savings and Decreased Expenses.[6]

Father testified that he has downsized his living expenses since the divorce. He stated that between 2014 and 2016, his monthly expenses decreased from $8,622 to $2,749. He sold his home, which had a mortgage payment of $3,935 a month, for $1.5 million, of which $759,901.75 was equity. One month prior to filing the Petition to Modify, Father spent some of that money to buy land in Johnson County with his girlfriend, paying half of the $350,000 purchase price. At the time of trial, Father still retained the rest of the proceeds from the house sale, was living with his girlfriend, and did not have a mortgage payment or pay rent. Father agreed that his net worth was "most likely" over a million dollars. Father testified that although he was current on his support obligation, he had been paying it out of his savings.

## 3. The Evidence Did Not Show that J.Z.'s Needs Have Decreased.

Father focused his arguments at the hearing on his financial circumstances, but the trial court also had evidence of J.Z.'s circumstances; namely, that there had been no

---

[6]Father focuses quite a bit of his argument on whether the trial court could consider certain assets in assessing his "net resources" for purposes of determining the default amount of child support under the guidelines. But, as we have already explained, the trial court was not restricted to following the guidelines to determine whether to modify an existing child support obligation.

material and substantial change in J.Z.'s circumstances to justify a modification. *See* Tex. Fam. Code Ann. § 156.401 (allowing the modification of a support obligation if the circumstances of the child affected by the order have materially and substantially changed). Under the possession-and-access order in the divorce decree, J.Z. lives with Mother except for every other weekend and certain holidays. Father acknowledged that Mother pays all of the childcare costs for J.Z. and pays for all school supplies, school fees, and other school costs such as class parties, yearbooks, and field day. Mother also buys all of J.Z.'s clothes. J.Z.'s after-school care costs about $300 a month during the school year and about $1,000 a month during the summer. Father does not contribute to expenses for J.Z. outside of the $1,500 support obligation other than paying for J.Z.'s participation in a baseball league. There was no testimony or other evidence that either J.Z.'s needs or the costs of caring for him have decreased.

**B.    The Trial Court's Finding of No Material and Substantial Change Was Not an Abuse of Discretion.**

Father cites to two cases in which a court of appeals held that a parent had established a material and substantial change in circumstances by showing a change in income. *See Trammell v. Trammell*, 485 S.W.3d 571, 578 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *In re P.C.S.*, 320 S.W.3d 525, 531 (Tex. App.—Dallas 2010, pet. denied). But, the trial court was not restricted to considering Father's income in deciding whether Father established a material and substantial change in his financial circumstances warranting modification. *See In re G.J.S.*, 940 S.W.2d 289, 293 (Tex.

10

App.—San Antonio 1997, no writ) ("Financial ability to pay child support does not depend solely on earnings, but extends to all sources of income."); *In re E.A.E.*, No. 2-09-162-CV, 2010 WL 3618707, at *5 (Tex. App.—Fort Worth Sept. 16, 2010, pet. denied) (mem. op.); *see also Plowman v. Ugalde*, No. 01-14-00851-CV, 2015 WL 6081666, at *5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2015, no pet.) (mem. op.) ("[A] trial court may take into consideration whether a parent has other assets at his disposal with which to pay child support.").

Further, *Trammell* and *PCS* would not require a different outcome in this case. In *Trammell*, there was no evidence that the father seeking modification had assets other than his income from which to pay child support. 485 S.W.3d at 577. To the contrary, the father there was insolvent and on the brink of bankruptcy. *Id.*

*P.C.S.* is also distinguishable. *See V.L.K.*, 2011 WL 3211245, at *3 (noting that a trial court's determination of whether a material and substantial change of circumstances has occurred is not guided by rigid rules and is fact specific). The father in that case lost his job after the divorce decree, but after filing for modification, he inherited $400,000. 320 S.W.3d at 531. After the job loss but before the inheritance, the father used his retirement funds to pay back loans and cover his living expenses. *Id.* After he received his inheritance, he used approximately $60,000 of it to start a business and, for about a year until the business was profitable enough to pay him a salary, used the inheritance to pay living expenses, child support, and some debt. *Id.* Once the business could pay him a salary, he used $150,000 of his inheritance to buy an annuity

11

retirement investment to replenish the retirement funds he had used and gave his stepson $1000 of the inheritance for the purchase of a vehicle. *Id.* at 531–32. That left approximately $75,000 of the inheritance, which he put in a money market account. *Id.* at 532. Here, Father is not jobless, relying solely on his savings to pay his living expenses. He is not using his savings to start a business to produce income or to keep his existing business afloat. He is not using the savings to replenish a retirement account he previously liquidated to pay his living expenses because he was jobless. Indeed, approximately a month before he filed the Petition to Modify, he used $175,000 of the over $750,000 from the sale of his house to buy land to possibly build on in the future,[7] and he still has the rest.

Even were we bound to follow that court's holding, the Dallas Court of Appeals in *P.C.S.* held that there was some evidence on which the trial court could exercise its discretion to find a material and substantial change in circumstances, but it did not hold that a decrease in income always qualifies as a material and substantial change in financial circumstances.[8] The inquiry in a modification proceeding based on changed

---

[7]Father testified that he has "a long-term goal to build something on [the] property." He pays $476 a month to store his belongings from the house he sold, and because he plans one day to build on the land he purchased, he does not "want to get rid of [his] stuff in [his] storage units." The amount he pays for storage is approximately the same amount of child support he wants the trial court to order.

[8]The Dallas court's language comes close to suggesting that a decrease in income is necessarily a material and substantial change in a person's financial circumstances, regardless of the person's other assets. But, while a material and substantial decrease in income can certainly be some evidence on which a trial court may exercise its discretion

12

finances is not whether the relevant person's income has changed, but is whether the person's financial circumstances, of which income is a part, have changed materially and substantially. Tex. Fam. Code Ann. § 156.401. Here, the trial court had evidence that Father knew at the time of the settlement agreement and divorce decree that his business's product would soon be obsolete; that Father pays nearly $500 a month in storage fees to hold on to belongings from his former house; that Father has chosen to increase his business's retained earnings and savings account rather than keep a larger salary; that Father chose to spend approximately $175,000 to buy land on which he may one day build something but which now sits empty; and, most importantly, that Father has substantial savings. None of these circumstances on their own or in a different context necessarily prevent a finding of a material and substantial change in financial circumstances. But put together with the other evidence at the hearing, the trial court had evidence from which it could, in its discretion, determine that Father failed to show a material and substantial change in circumstances.

Although Father is paying himself a lower salary due to the decrease in his company's business, his expenses have also drastically decreased, and he has substantial savings. Considering all the evidence that the trial court could consider, the trial court's conclusion was not an abuse of discretion.

---

to modify a support obligation, we decline to hold that it necessarily satisfies the statutory ground for modification regardless of a parent's other assets so as to remove a trial court's discretion to find otherwise.

## C.     Father's Other Arguments Are Unavailing.

Father asserts that "[t]he court may consider factors like the parent's 'ability . . . to contribute to the support of the child' and 'any financial resources available for the support of the child' only when the 'evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines.'"  Father cites Family Code Section 154.123 for that proposition, but he ignores Section 156.402.  Tex. Fam. Code Ann. § 154.123 (West 2014), § 156.402(a) ("The court *may* consider the child support guidelines for single and multiple families under Chapter 154 to determine whether there has been a material or substantial change of circumstances." (emphasis added)).  As we have stated, a trial court's consideration of the guidelines is discretionary in determining whether to modify child support.  *See Id.* § 156.402; *E.A.E.*, 2010 WL 3618707, at *6 (rejecting an argument in a modification proceeding that a child support obligation "well beyond" the guidelines is presumptively not in the child's best interest and noting that "compliance with the statutory guidelines is discretionary when a trial court is considering whether to modify an existing child support order"); *A.B.K.*, 2007 WL 3293724, at *2 (noting that "[i]n a suit to modify a child support order, the court *may* modify the order to substantially conform with the guidelines but the court may also consider other relevant evidence in addition to the factors listed in the guidelines"; "[t]hus, the court's use of the guidelines for setting the amount of child support in a modification proceeding is discretionary, not mandatory" (citation and internal quotation marks omitted)).

14

Father further argues that the trial court could not disregard the guidelines without making the findings required by Family Code Section 154.130. As stated, the trial court did not have to follow the guidelines. And even if the findings in that section would have been required had the trial court modified the support obligation, they were not required here because the trial court left the existing support obligation in place. *See Onkst v. Onkst*, No. 03-15-00636-CV, 2017 WL 2628245, at \*4 (Tex. App.—Austin June 16, 2017, no pet.) (mem. op.); *Hardin v. Hardin*, 161 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2004), *judgm't vacated op. not withdrawn*, No. 14-03-00342-CV, 2005 WL 310076 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005, no pet.) (mem. op.). Father acknowledges as much in his reply brief.

Finally, Father argues that the trial court found in its judgment that "the child support previously ordered is within the guidelines of Chapter 154." In its judgment, the trial court stated, "After hearing the evidence and the argument of counsel, the Court finds that the child support previously ordered is within the guidelines of Chapter 154 of the Texas Family Code, and that lowering the child support payments previously ordered would not be in the best interest of the child." The finding in the judgment does not merit reversal. The trial court did not repeat the finding in its separately-filed findings of fact and conclusions of law, wherein it found that Father did not meet his burden of establishing a material and substantial change in circumstances and that the evidence established that the child support amount in the prior order was in J.Z.'s best interest. As stated, the trial court did not have to follow the support guidelines in

15

determining whether Father had established a material or substantial change in circumstances. If Father did not establish a material or substantial change in circumstances, he was not entitled to a modification, regardless of whether the previously-ordered support still complied with the guidelines at the time of the modification hearing. *See* Tex. Fam. Code Ann. § 156.401; *G.J.S.*, 940 S.W.2d at 293 ("We are not bound by what is contained in the findings of fact where a complete statement of facts reveals otherwise and the conclusion is legally sound.").

The trial court had some evidence on which to base its finding that Father's circumstances had not changed so as to warrant modifying the child support obligation, and the finding was supported by sufficient evidence. Accordingly, the trial court's denial of the modification was not an abuse of discretion.

Because we have upheld the trial court's finding that Father's circumstances had not materially and substantially changed, we do not address his second issue arguing that he established that a modification was in J.Z.'s best interest. *See* Tex. Fam. Code Ann. § 156.101(a); Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled Father's first issue, which is dispositive, we affirm the trial court's order denying Father's Petition to Modify.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered:  October 25, 2018