**AFFIRM; and Opinion Filed April 25, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00223-CV

## IN THE INTEREST OF S.G.C.-G., A CHILD

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-10-21940**

# MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Molberg

C.L. appeals the trial court's order in this suit to modify the parent–child relationship. In two issues, C.L. argues the trial court abused its discretion by applying the parental presumption in section 153.131 of the family code to a modification proceeding and by determining it was in the best interest of S.G.C.-G., the child who is the subject of the modification proceeding, for J.G. (Father) to be the conservator with the right to designate the primary residence of the child. We affirm the trial court's order.

**Background**

S.G.C.-G. is the child of Y.C. (Mother) and Father. Mother and Father were both teenagers when S.G.C.-G. was born in 2008. Because Mother and Father were attending school, when S.G.C.-G. was two months old, she began living with C.L. C.L. is not "blood related" to S.G.C.-G; rather, Y.C.'s adopted mother's nephew had been married to C.L.'s mother.

In 2010, the Office of the Attorney General (OAG) filed a petition to establish the parent–child relationship between S.G.C.-G. and Father. The OAG also requested that the trial court appoint appropriate conservators for S.G.C.-G. and require Father to pay child support. The clerk's record indicates an "Agreed Judgment" was rendered on June 20, 2011. Although that judgment is not in the appellate record, based on the parties' testimony, it named Mother and Father as joint managing conservators of S.G.C.-G. and gave Mother the right to designate S.G.C.-G.'s primary residence.

On November 15, 2013, Father filed a petition to modify the parent–child relationship, seeking to modify the June 20, 2011 agreed judgment. Father requested that he and Mother be appointed joint managing conservators, he be designated as the conservator with the exclusive right to determine the primary residence of S.G.C.-G, and Mother be ordered to pay child support. Mother filed a counter-petition to modify the parent–child relationship on January 7, 2014, requesting an increase in the amount of child support Father was required to pay.

On March 13, 2014, the trial court signed an agreed order denying the requested modifications and incorporating the parties' agreement on issues relating to possession of S.G.C.-G. Father was given "standard possession" of S.G.C.-G.[1] C.L., although not a party to the proceedings, was given (1) the right to reasonable telephone access to S.G.C.-G. when the child was with Father or Mother; (2) the right to consent to medical and dental care for S.G.C.-G., including treatment involving invasive procedures; and (3) the right to share in educational decisions for S.G.C.-G. with Mother, provided that C.L.'s decisions were subordinate to Mother's decisions.

On August 5, 2015, Mother took S.G.C.-G. to live in Paris, Texas. C.L. filed a petition to modify the parent-child relationship on October 7, 2015, alleging Mother had a history of mental

---

[1] *See* TEX. FAM. CODE ANN. § 153.312.

illness and that both Mother and Father had a history of illegal drug usage, unstable work and living conditions, and outstanding arrest warrants. C.L. alleged S.G.C.-G. had been injured while in Mother's care, was having behavioral issues, and did not have appropriate and necessary clothing and supplies. C.L. requested to be appointed managing conservator of S.G.C.-G. with the exclusive right to designate the child's residence and that Mother and Father be required to pay child support.

Mother failed to appear at a December 30, 2015 hearing before an associate judge on C.L.'s request for temporary orders. The associate judge determined S.G.C.-G. would reside with C.L., Father's child support payment would be re-directed to C.L., and a social study would be performed on Mother, Father, and C.L. Father's visitation with S.G.C.-G. continued as previously ordered, but Mother was allowed only supervised possession of S.G.C.-G. one Saturday a month. On March 24, 2016, Father filed a petition to modify the parent-child relationship, requesting that he be appointed the person who had the right to designate S.G.C.-G.'s primary residence.

The trial court heard C.L.'s and Father's petitions to modify on November 17, 2017. The evidence at trial established S.G.C.-G. lived primarily with C.L. Father exercised his weekend possession of S.G.C.-G., but did not exercise his right to see her on Thursday evenings due to difficulties in "mak[ing] that two-hour window," and the conflict he had with C.L. over picking up and returning S.G.C.-G. timely. Mother had had limited contact with S.G.C.-G. since December 2015.

It was undisputed C.L. had financially supported S.G.C.-G. since the child was two months old. It was also undisputed that, under C.L.'s care and the existing possession schedule, S.G.C.-G. was excelling academically, engaged in extracurricular activities, and behaved appropriately. Finally, it was undisputed that C.L. and Father had disagreements about possession times and Father's ability to participate in S.G.C.-G's school events and extracurricular activities.

C.L. testified that she had lived in the same house since 1995. She had been married for eleven years, and her husband was helping to raise S.G.C.-G. C.L. had one daughter who was currently in college, but lived with the family during school breaks. C.L.'s husband had been convicted of a felony in 1993, but C.L. did not have a criminal history.

C.L. denied that she had attempted to exclude either Mother or Father from S.G.C.-G.'s life, but admitted to conflict over Father's failing to adhere to the times in the possession order. C.L. believed neither Mother nor Father had a stable residence or employment and that it was in S.G.C.-G.'s best interest to continue to live with C.L.

J.C. adopted Mother when she was four years old. In J.C.'s opinion, C.L. took good care of S.G.C.-G. In 2015, both Mother and S.G.C.-G. lived with J.C. in Paris and, in J.C.'s opinion, Mother did not adequately care for S.G.C.-G. J.C. also believed that Mother smoked marijuana, and Mother admitted that she had used marijuana as recently as the weekend prior to the trial.

Father testified he and his wife had been married for almost six years and had two children. According to Father, there was no violence in his home. Although the family was currently living with Father's mother-in-law, they were moving into an apartment the next month in which S.G.C.-G. would have her own room. Father's wife testified that she was teaching S.G.C.-G. to sew and cook and to be more responsible. Father intended to stress the value of education to S.G.C.-G. and ensure she continued to do well in school.

Father had been employed for seven months at a warehouse. Father admitted that, in the past, he had changed jobs frequently for different reasons, including his wife's illness and a better work opportunity. Father also admitted that, between 2014 and 2016, he drove with S.G.C.-G. in the car when he did not have a valid driver's license. However, he had resolved the outstanding warrants and, at the time of trial, had a valid driver's license.

According to Father and his wife, C.L. had not included them in all of S.G.C.-G.'s activities. Specifically, C.L. had not invited them to S.G.C.-G.'s birthday parties, or had provided incorrect information about the location of the parties, had refused to allow them to enroll S.G.C.-G. in certain extracurricular activities, and had interfered with Father participating in S.G.C.-G.'s school activities. Mother testified C.L. had also excluded her from events in S.G.C.-G.'s life.

In Father's opinion, the current environment was not the "whole family environment" for S.G.C.-G. He believed that S.G.C.-G. would benefit from living with her siblings and had more fun at his house than at C.L.'s house. Father testified he could show S.G.C.-G. her "heritage" and that, in his opinion, C.L. was attempting to separate S.G.C.-G. from her biological family. Father believed S.G.C.-G. was being "tugged" between the parties and was trying to make everybody happy.

Mother agreed the conflict between her and Father, on the one hand, and C.L., on the other, had an "extreme effect" on S.G.C.-G. Mother testified that both she and Father had been raised by people other than their biological parents, and she was concerned history was repeating itself. Mother believed it was in S.G.C.-G.'s best interest to live with Father.

The trial court spoke with S.G.C.-G. during the trial. Although the interview was not recorded, the trial court presumably received some information on S.G.C.-G.'s desires.

Finally, Myra Kirkland, a child custody evaluator for Dallas County, conducted evaluations on C.L., Father, and Mother in 2016. Because Mother failed to complete the evaluation, Kirkland was not able to make a conservatorship recommendation. Kirkland, however, was able to determine concerns that she had with the parties and considerations for the trial court.

Kirkland did not have any concerns about either C.L.'s or Father's home. However, she was concerned about C.L.'s frustration with Mother and Father. As for Father, Kirkland was concerned that he placed his own plans above the needs of S.G.C.-G., he lacked stability, he had

active warrants for traffic citations and was unable to resolve his legal issues; he did not have a valid driver's license, and he lacked insight.

Kirkland was concerned that Mother (1) had insufficient, inconsistent income; (2) lacked stability and employment; (3) lacked transportation and shelter; (4) lacked insight into S.G.C.-G.'s needs; (5) did not have a driver's license; (6) had active warrants for traffic citations; (7) was a poor role model; and (8) possibly had untreated mental illness. Kirkland had also been informed that Mother failed a drug test during the pendency of the proceedings.

Kirkland asked the trial court to consider that S.G.C.-G. had resided with C.L. for all but a few months of her life and had done well while living with C.L. Academically, S.G.C.-G. was at the top of her class and was rarely absent or tardy. However, while S.G.C.-G. was living with Mother in Paris for approximately twelve weeks in 2015, she was absent from school six times and tardy five times. Kirkland also noted that C.L. had pictures of Mother and Father in her house and S.G.C.-G. had a picture book showing things she had done with Mother and Father. In Kirkland's opinion, C.L. took "great pains" in keeping Mother and Father alive in S.G.C.-G.'s mind.

Kirkland testified that stability, including financial, academic, relationship, and housing, was important to a child. In Kirkland's opinion, S.G.C.-G. had that stability with C.L. However, because Mother and Father moved residences and frequently changed jobs, or were unemployed, they did not offer the same stability to S.G.C.-G.

During closing arguments, C.L.'s attorney stressed the stability that C.L. had provided to S.G.C.-G. throughout her life. She noted S.G.C.-G. had thrived under C.L.'s care and denied that C.L. had kept S.G.C.-G. from her parents. C.L. requested that she be named the primary managing conservator of S.G.C.-G, Father have standard visitation, and Mother have supervised visitation.

Father's attorney argued C.L. had not overcome the presumption in section 153.131 of the family code that appointing a parent as a joint managing conservator is in the best interest of a child. She argued Father had secured adequate housing, had transportation, was employed, and had demonstrated appropriate parenting skills. Father requested that he be designated the conservator with the exclusive right to designate the primary residence of S.G.C.-G.

The trial court found that all the material allegations in Father's petition were true and his requested modification was in S.G.C.-G.'s best interest. The trial court removed Mother and Father as managing conservators and appointed Father as sole managing conservator and Mother as possessory conservator of S.G.C.-G. The trial court ordered Mother could have possession of S.G.C.-G. at times mutually agreed to in advance by Father.

The trial court granted C.L.'s petition, in part, and denied it in part. Specifically, the trial court ordered C.L. would not be appointed as a conservator for S.G.C.-G., but would have possession of S.G.C.-G. on the second weekend of each month. Finally, the trial court ordered Mother to pay child support to Father and confirmed child support arrearages owed by Father to both Mother and C.L.

**Analysis**

In two issues, C.L. argues the trial court erred by not naming C.L. as managing conservator with the right to designate S.G.C.-G.'s primary residence because (1) the parental presumption does not apply to modification proceedings and (2) the evidence established Mother's circumstances had materially and substantially changed since the March 13, 2014 order and that naming C.L. as the conservator with the right to designate S.G.C.-G.'s primary residence was in the child's best interest.

*Standard of Review*

We review a trial court's decision on whether to modify the parent-child relationship for an abuse of discretion. *In re S.V.*, No. 05-16-00519-CV, 2017 WL 3725981, at *6 (Tex. App.—Dallas Aug. 30, 2017, pet. denied) (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *In re P.C.S.*, 320 S.W.3d 525, 530 (Tex. App.—Dallas 2010, pet. denied).

A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *In re D.P.B.*, No. 05-17-00185-CV, 2018 WL 3014628, at *1 (Tex. App.—Dallas June 15, 2018, no pet.) (mem. op.). The fact a trial court decided a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *In re M.S.G.*, No. 14-16-00236-CV, 2017 WL 3611907, at *8 (Tex. App.—Houston [14th Dist.] Aug. 22, 2017, no pet.) (mem. op.).

In family law cases, traditional sufficiency standards of review overlap with the abuse of discretion standard. *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). Challenges to the sufficiency of the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *In re P.C.S.*, 320 S.W.3d at 531. To determine whether the trial court abused its discretion, we consider whether it (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its exercise of discretion. *In re A.P.B.*, 291 S.W.3d at 95. We conduct the applicable sufficiency review with regard to the first question. *Id.* Under the second issue, we determine whether, based on that evidence, the trial court made a reasonable decision. *Ceniseros v. Rychlik*, No. 03-17-00532-CV, 2018 WL 4265679, at *2 (Tex. App.—Austin Sept. 7, 2018, no pet.) (mem. op.).

To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *In re S.V.*, No. 05-18-00037-CV, 2019 WL 516730, at *7 (Tex. App.—Dallas Feb. 11, 2019, no pet. h.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam)). When the evidence conflicts we must presume the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *Ceniseros*, 2018 WL 4265679, at *3 (citing *City of Keller*, 168 S.W.3d at 822).

In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and to "feel the forces, powers, and influences" that may not be apparent from merely reading the record on appeal. *Niskar*, 136 S.W.3d at 753; *see also In re S.V.*, 2019 WL 516730, at *7 (noting appellate court must be "mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony"). "As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court." *In re J.R.P.*, 526 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

*Material Change in Circumstances*

In an effort to ensure stability and continuity for children, Texas has imposed "significant hurdles" before a conservatorship order may be modified. *In re A.L.E.*, 279 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Specifically, as relevant here, the trial court may

modify a conservatorship order if modification would be in the child's best interest and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the prior order. TEX. FAM. CODE ANN. § 156.101(a). The purpose of the material-change-in-circumstances requirement is based on a policy of preventing constant re-litigation with respect to children. *In re K.D.B.*, No. 01-18-00840-CV, 2019 WL 1119404, at *7 (Tex. App.—Houston [1st Dist.] Mar. 12, 2019, no pet. h.) (mem. op.)

"In considering whether a material and substantial change in circumstances has occurred, the trial court compares the evidence of the conditions that existed at the time of the entry of the prior order with the evidence of the conditions that existed at the time of the hearing on the petition to modify." *In re C.F.M.*, No. 05-17-00141-CV, 2018 WL 2276351, at * 2 (Tex. App.—Dallas May 18, 2018, no pet.) (mem. op.) (quoting *In re H.N.T.*, 367 S.W.3d 901, 904 (Tex. App.—Dallas 2012, no pet.)). The party seeking modification bears the burden of establishing a material and substantial change in circumstances. *In re C.H.C.*, 392 S.W.3d 347, 349 (Tex. App.—Dallas 2013, no pet.). A material and substantial change in circumstances may be shown by direct or circumstantial evidence. *Arredondo v. Betancourt*, 383 S.W.3d 730, 735 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also In re C.F.M.*, 2018 WL 2276351, at *2.

Whether circumstances have materially and substantially changed is a fact-specific determination not guided by rigid or definite rules. *In re E.A.D.P.*, No. 05-15-01210-CV, 2016 WL 7449369, at *2 (Tex. App.—Dallas Dec. 28, 2016, no pet.) (mem. op.); *Zeifman v. Michels*, 212 S.W.3d 582, 593 (Tex. App.—Austin 2006, pet. denied). However, material changes can include a change in home surroundings or a parent's becoming an improper person to exercise custody. *In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied); *In re A.L.E.*, 279 S.W.3d at 428–29. Further, a parent's drug use can support a trial court's finding of a material and substantial change. *In re J.R.P.*, 526 S.W.3d at 779.

Both Father and C.L. requested that the March 13, 2014 agreed order be modified to remove Mother as joint managing conservator with the right to designate S.G.C.-G.'s primary residence.[2] In March 2014, S.G.C.-G. was living in C.L.'s home. Mother's permanent address on both her driver's license and in the court documents was C.L.'s address. Further, Mother was spending time with S.G.C.-G. in C.L.'s home.

At the time of hearing on the petitions to modify, Mother no longer visited C.L.'s home and did not have a stable place to live in Paris. Further, Mother was no longer in school and does not appear to have been employed until shortly before trial. Mother had failed a drug test during the pendency of the proceedings and admitted to using marijuana the weekend prior to trial. Finally, there was evidence that, while S.G.C.-G. was living with Mother between August and December of 2015, Mother did not adequately care for the child.

We conclude there was sufficient evidence to establish a material and substantial change in Mother's circumstances between the March 13, 2014 order and the hearing on Father's and C.L.'s petitions to modify.

### Best Interest of Child

C.L. next argues she established it was in S.G.C.-G's best interest for C.L. to be named a conservator and given the right to designate the child's primary residence, Father failed to establish it was in S.G.C.-G.'s best interest for Father to be given the right to designate the child's primary residence, and the trial court erred by applying the parental presumption in section 153.131 of the family code to a modification proceeding.

The best interest of the child must always be the primary consideration of the trial court in determining issues of conservatorship and possession. *In re S.V.*, 2017 WL 3725981, at *6; *Niskar*,

---

[2] We note that Mother was named joint managing conservator with the right to designate S.G.C.-G.'s primary residence in the June 20, 2011 agreed judgment, not the March 13, 2014 agreed order.

136 S.W.3d at 755. Texas law presumes that the appointment of the parents of a child as joint managing conservators is in the child's best interest. TEX. FAM. CODE ANN. § 153.131(a).[3] This presumption, however, applies only in original custody proceedings under chapter 153 of the family code and not in modification proceedings under chapter 156. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *In re K.D.B.*, 2019 WL 1119404, at *12.

Although it is undisputed that C.L.'s and Father's petitions were modification proceedings under chapter 156 of the family code, Father's attorney argued during closing argument that the parental presumption in chapter 153 of the family code applied and C.L. had failed to rebut the presumption. However, nothing in the record indicates the trial court agreed with counsel's argument or applied the parental presumption in reaching its decision.

We, therefore, turn to whether the trial court abused its discretion by determining under chapter 156 of the family code that it was S.G.C.-G.'s best interest for Father to be given the right to establish her primary residence and for C.L. not be given that right. "Best interest" is a term of art encompassing a broad, facts-and-circumstances-based evaluation that is accorded significant discretion. *In re E.A.D.P.*, 2016 WL 7449369, at *2 (quoting *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding) (plurality op.)). In determining the best interest of a child, the trial court may consider, among other things, the desires of the child; the child's current and future emotional and physical needs; any emotional or physical danger to the child; the parental abilities of the individual seeking custody and the plans for the child; the stability of the home; acts or omissions

---

[3] Section 153.131(a) of the family code provides:

> Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

Section 153.004 of the family code prohibits the trial court from appointing joint managing conservators if there is credible evidence of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child. TEX. FAM. CODE ANN. § 153.004(b).

by a parent tending to show the existing relationship is not a proper one; and any excuse for the acts or omissions of the parent. *In re S.N.Z.*, 421 S.W.3d at 910 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). In the context of a custody modification, other factors to consider include the child's need for stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d at 343. These factors are not exhaustive, and there is no requirement that a party present evidence on all the factors. *In re K.D.B.*, 2019 WL 1119404, at *8.

C.L., Father, and Mother all undoubtedly love S.G.C.-G. and she loves them in return. Further, the evidence presented at the hearing reflects S.G.C.-G. has lived with C.L. for the majority of her life. C.L. has supported S.G.C.-G. financially and emotionally, and S.G.C.-G. has thrived while living with C.L. However, there was also evidence that C.L. had taken steps to minimize both Father's and Mother's role in S.G.C.-G.'s life and that the conflict between C.L., Mother, and Father was having a negative effect on S.G.C.-G.

Father and his wife had been married for almost six years and had two children. Father testified that S.G.C.-G. was happy in his home, had a good relationship with her stepmother, and enjoyed being with her siblings. Father's wife indicated she had taught S.G.C.-G. a number of skills, including cooking and sewing, and that S.G.C.-G. was becoming more responsible while living in their household. C.L., Mother, and Father all stressed the importance of S.G.C.-G. continuing to excel academically and engaging in extracurricular activities.

Both Mother and Father testified it was important for S.G.C.-G. to live with her biological family so that she could learn about her family history and spend more time with family members. The trial court was also aware of S.G.C.-G.'s desires.

Kirkland testified her only concern with C.L. was her "frustration" with Mother and Father. Although Kirkland expressed more concerns with S.G.C.-G. being placed primarily in Father's

care, Father had addressed a number of those concerns by obtaining a job, locating an apartment in which S.G.C.-G. would have her own room, resolving his outstanding traffic warrants, and obtaining a valid driver's license.

A trial court is given wide latitude in determining the best interest of a minor child. *In re S.H.*, No. 05-18-00733-CV, 2018 WL 6845314, at *5 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "We will not second guess the trial court's evaluation nor can we substitute our opinion of the evidence, even should we be inclined to do so." *In re M.S.F.*, 383 S.W.3d 712, 717 (Tex. App.—Amarillo 2012, no pet.). After reviewing the record as a whole, we conclude there was sufficient probative evidence to support the trial court's determination that it was in S.G.C.-G.'s best interest for Father to be given the right to determine her primary residence.

## Conclusion

We conclude there is sufficient evidence to support the trial court's findings of a material and substantial change in Mother's circumstances since the March 13, 2014 order and that it was in S.G.C.-G's best interest for Father to be named the conservator with the right to determine her primary residence. Further, based on that evidence, the trial court made a reasonable decision in determining Father should have the right to designate S.G.C.-G.'s primary residence.

We conclude the trial court did not abuse its discretion in granting Father's petition to modify and denying, in part, C.L.'s petition to modify. Accordingly, we resolve C.L.'s two issues against her and affirm the trial court's order.

/Ken Molberg/

180223F.P05

KEN MOLBERG
JUSTICE

–14–



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF S.G.C-G., A
CHILD,

No. 05-18-00223-CV

On Appeal from the 330th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DF-10-21940.
Opinion delivered by Justice Molberg,
Justices Whitehill and Reichek
participating.

In accordance with this Court's opinion of this date, the of the trial court's February 22, 2018 Order in Suit to Modify Parent-Child Relationship is **AFFIRMED**.

It is **ORDERED** that appellee Joseph Grigsby recover his costs of this appeal from appellant Chairessee Lowe.

Judgment entered this 25th day of April, 2019.